## JOSEPH CLAYBAUGH
### v.
## ROBERT B. HENNESSY.

*Judgment Sustained upon Review of Evidence—Surrender of Note—Practice.*

1. Where a jury is waived and the cause is tried by the court, the same presumptions attach to the findings of the court as would have attached to the verdict of a jury.

2. Upon a review of the evidence, which was conflicting, the judgment of the court below is affirmed, the question being as to whether a certain agreement was in effect the surrender of a note.

[Opinion filed August 26, 1886.]

APPEAL from the Circuit Court of Edgar County; the Hon. J. F. HUGHES, Judge, presiding.

Mr. JAMES A. EADS, for appellant.

Messrs. SELLAR, DOLE & BACON, for appellee.

WALL, J.  This was an action of assumpsit.  Appellee held a note signed by Johnson Claybaugh as principal and Joseph Claybaugh as surety, for $800, which had been reduced by payments to $300.  Being unable to pay this balance the principal, Johnson, said to appellee that if he could borrow the money to pay it he would do so, to which appellee, as he says, replied that he thought the sum required could be borrowed from one Bibo.  According to the version of appellee he saw Bibo and learned that he would loan the money to Johnson on his note with Joseph and James Claybaugh and appellee as sureties, and so informed Johnson; and it was then arranged by him and Johnson that if such a note was made and the money obtained, appellee would retain the note he then had on Johnson and Joseph until the Bibo note, which was to run one year, was due, and if it was paid by Johnson that would settle the old note, but if appellee had to pay anything on the Bibo note, then he was to collect that on the old note.  That a note

was drawn up, signed by Johnson and his two brothers, Joseph and James, and by the former brought to appellee for his signature.   He signed it and took the old note from his desk to make entry of the facts upon it when he was called out of the room by some person, and leaving the old note on the desk was absent a few moments; when he returned Johnson was gone, and so was the old note; but that did not occur to him then, nor until after the maturity of the Bibo note, when he recalled the circumstance after having searched in vain for the old note, and was then informed by Johnson that he had it and owed appellee nothing on it.   The note to Bibo was paid by appellee, Joseph, and James, in equal parts, and it is to recover the part paid by appellee that this suit was brought against Johnson and Joseph.

The case was heard by the court without a jury and there was a finding and judgment for the plaintiff below for $132. The same presumptions attach to this finding of the court that would to the verdict of a jury.   It is purely a question of fact what was the arrangement, and whether the old note was to be given up or whether it was to remain as stated by appellee.

Johnson denies the version of appellee as to this point and insists the note was surrendered and canceled by this transaction.    Joseph says he knew nothing of the alleged arrangement and would not have consented to it.

There are, however, several circumstances which point the other way..   It is not probable the appellee would voluntarily and without consideration give up one third of the money secured by the old note for the sake of getting the other two thirds and the explanation made by him of the transaction is not hard to believe.

It is quite easy to believe appellant understood it the same way, and, while he now insists that such an arrangement would have put him in a more unfavorable position, it is not clear that he would have so regarded it then, or that this claim is now made in good faith.   It was but a change of security so far as appellant was concerned and he probably considered it a desirable thing at the time.   The conduct of appellant when appellee was trying to find the old note and before he recalled

the circumstance of leaving it on the desk when Johnson was present tends to show that he knew more of the matter than he now admits.

There are some points on which appellee is contradicted by the testimony of Bibo and the case upon the whole proof is by no means free from doubt, but the trial court saw the witnesses, heard them testify and had the opportunity to observe many circumstances in their demeanor and general appearance which would properly affect the mind in reaching a conclusion but which it is impossible to incorporate in a bill of exceptions. We can not say, considering the evidence and the inferences reasonably to be deducted therefrom, that the finding is so clearly wrong as to justify interference by this court.

The judgment will be affirmed.

*Affirmed.*